# EXHIBIT A



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Kevin Fahey et al*
_____
                                                    Plaintiff

                                                                    Case Number | **2018 CA 004842 B**

Deoleo USA Inc
7557 Rambler Road, Suite 700
Dallas TX  75231                     _____
Corporation Trust Company        fendant
Corpo Trust Center                        **SUMMONS**
To the above named Defendant:
     1209 Orange Street, Wilmington DE 19801

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Thomas C. Willcox*
_____
Name of Plaintiff's Attorney

*1701 16th Street, N.W., Suite 211*
_____
Address

*Washington DC  20009*
_____

*202.338.0818*
_____
Telephone

                                        *Clerk of the Court*

By _____

Date _____
         **07/10/2018**

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ተርጓሚ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation

Filed
D.C. Superior Court
07/06/2018 10:02RM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| A. Kevin Fahey<br>5301 Birds View Lane, Unit D<br>Alexandria, VA<br><br>on behalf of the General Public of the<br>District of Columbia<br><br>     Plaintiff,<br><br>v.<br><br>Deoleo USA Inc.<br>7557 Rambler Road, Suite 700<br>Dallas, Texas 75231<br>   Defendant | )<br>)<br>)<br>)<br>)<br>)  Civil Action No: **2018 CA 004842 B**<br>)<br>)<br>)<br>)<br>)  Jury Trial Demanded<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kevin Fahey ("Plaintiff"), by and through his counsel, brings this action

against Deleo USA ("Deleo" or the "Defendant" ) on behalf of the General Public of the District of

Columbia, and alleges the following based upon information, belief and the investigation of counsel:

### NATURE OF THE CASE

1. Plaintiff brings this action on behalf of the general public in the District of Columbia to redress

   the pattern of fraudulent, deceptive and otherwise improper sales and marketing practices

   engaged in by the Defendant

2. In short, the Defendant, a major purveyor of olive oil, represents that much of what it sells is

   "extra virgin", meaning it meets various standards, is of the highest quality and has many

1

substantial health benefits.

3. However, comprehensive testing at a major university in 2010 revealed Defendants product failed to meet the standards for extra virgin olive oil.

4. The Plaintiff and Class Members seeks to enjoin such fraud, obtain disgorgement of profits from sales of the product in question and obtain appropriate monetary damages for the consumers who purchased such products in the District of Columbia.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

9. This Court has personal jurisdiction over the Defendant pursuant to D.C. Code §13-423, as Defendant sells its products at stores throughout Washington, D.C.

10. In addition, a substantial part of the actions which gave rise to Class Members' cause of action occurred in this jurisdiction.

## THE PARTIES

11. Plaintiff Keven Fahey is a resident of Virginia.

12. Defendant the Deleo Company is a | Delaware corporation with a principal place of business in Texas

## LEGAL FRAMEWORK - THE INTERESTS OF THE CLASS MEMBERS AND THE GENERAL PUBLIC AND THE DC CONSUMER PROTECTION ACT

13. The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, prohibits unlawful trade practices. The prohibited trade practices include, in relevant part, actions that

2

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have

(b). represent that goods have characteristics, uses, or benefits that they do not have;

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead;

(f-1), use innuendo or ambiguity as to a material fact, which has a tendency to mislead

(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and

(x) to sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Code, Official Code, or by operation or requirement of federal law.

Section 3904.

14.     Additionally, "the CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law prohibitions." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).

15.     The CPPA allows for treble damages, or $1500 per violation, whichever is greater, as well as reasonable attorneys' fees, punitive damages, an injunction against the unlawful trade practice, "additional relief as may be necessary to restore the consumer money or property . . . which may have been acquired by means of the unlawful trade practice," and "any other relief the court deems proper." D.C. Code § 28-3905(k)(1).

16.     Plaintiff brings this action on behalf of himself and as a Representative Class Members acting for the interests of the general public of the District of Columbia, seeking relief from Defendant's use of trade practices in violation of laws of the District of Columbia, pursuant to D.C. Code § 28-3905(k)(1).

17.     Extra Virgin Olive Oil is a "consumer good", and the Defendant is a "merchant" within

3

the meaning of the CPPA. D.C. Code § 28-3901(1)(2) and (7).

## THE FAHEY PURCHASE

18.     On May 24th 2018 Mr. Fahey purchased a bottle of Bertolli Extra Virgin Olive Oil at a

Wal Mart in Washington DC A copy of the receipt and photographs of the bottle labeling is

attached as Exhibit A.

## FACTUAL ALLEGATIONS

19.     EVOO sits at the pinnacle of the olive oil industry and it is considered the gold

standard. The term Extra Virgin is defined by the International Olive Counsel ("IOC"), the

USDA, and the state of California, the United State's largest domestic olive oil producer.

20.     Since Defendant is an experienced retailer of Olive Oil and other food products

(Defendant's EVOO, once purchased by consumers, is at times referred to as the "Product" or

"Products") it clearly knows, or should know, what the term Extra Virgin means.

21.     The IOC specifically defines EVOO as: virgin olive oil which has a free acidity,

expressed as oleic acid, of not more than 0.8 grams per 100 grams, and the other characteristics

of which correspond to those fixed for this category in this standard.

22.     The IOC defines a sensory taster as an individual who is specialized in the sensory

analysis of a specific product and has a basic understanding of the preparation of the product

and market preferences. The IOC utilizes a protocol for its sensory testing includes, but is not

limited to, perception, sensation, and sensitivity. '

23.     Since 1948, the USDA has regulated olive oil grades and utilized both chemical and

sensory standards to determine quality. Currently quality is rated on a scale of A, which has the

characteristics of what the IOC and others refer to as EVOO, B, and C.

24.     In light of the volumes of olive oil imported into the US, on October 25, 2010, the

4

USDA incorporated many of the IOC regulations into an updated set of voluntary Standards

25.      The new USDA standards define "U.S. Extra Virgin Olive Oil" as: virgin olive oil

which has excellent flavor and odor (median of defects equal to zero and median of fruitiness

greater than zero) and a free fatty acid content, expressed as oleic acid, of not more than 0.8

grams per 100 grams, and meets the additional requirements as outlined in section 53.1539, as

appropriate. Section 53.1539 sets forth the criteria to ascertain the grades of the oil using both

chemical and sensory standards.

26.      The state of California defines "Extra Virgin Olive Oil" as: virgin olive oil which has a

free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams of oil, has a

peroxide value of not more than 20 mill equivalent peroxide oxygen per kilogram of oil and

would meet sensory standards of extra virgin olive oil as determined by a state panel certified

by the International Olive Oil Council, or, if the International Olive Oil Council ceases to

certify taste panels, would meet the sensory standards of a taste panel that is operated by the

University of California or California State University according to guidelines adopted by the

International Olive Oil Council as of 2007.

27.      In fact, only olives picked fresh and slightly unripe, pressed within 24 hours of harvest,

and carefully monitored will become "Extra Virgin Olive Oil" within each of the

aforementioned standards. Otherwise, the oil will be among the lower grades of "virgin",

"pure", or "light" olive oil.

28.      Over the years there have been media reports of deception in the olive oil business,

where extra virgin olive oil was diluted and counterfeited. This dilution process with other

olive oils makes detection of the adulteration difficult.

29.      The methodology/process required to produce EVOO makes it impossible for olive oil

importers to sell the volume of EVOO they do. Because many of the olives come from small

farmers in places like Spain, it is sometimes logistically impossible to make Extra Virgin Oil

from these olives, given the time sensitive and delicate processes that are necessary to make

true grade extra virgin olive oil.

30.    Olive oil producers use the precious little true Extra Virgin Olive Oil for countries

whose consumers have a longer history of consuming EVOO and have a taste pallet that

commands only this true high quality product. While producers save the "good stuff" for other

consumer markets, such as European markets, they sell Americans the sub-standard and rancid

olive oil, mixing and manipulating the chemistry of the oil so that it, under a microscope,

approximates (but falls far short of) true grade extra virgin olive oil.  In 1993, the FDA ordered

a recall of Rubino U.S.A. Inc., (Cincinnati, Ohio) olive oils which were nothing more than

canola oil.

31.    In 1997, the Canadian Food Inspection Agency began conducting tests on 100 oils that

claimed to be 100% olive oil and in 1999 the CFIA concluded that 20 percent of the oils were

fake.

32.    In 2000, the Canadian Food Inspection Agency tested 100 imported oils and found all

but 20 were adulterated with other vegetable oils.

33.    In 2003, the Italian Agricultural Ministry brought more than 1,000 cases of fraud,

involving the mislabeling of olive oil to court. Later that year, the Italian Government admitted

that there was nothing that they could do about re-exported foreign oil being labeled as

"Imported from Italy".

34.    In 2007, *The New Yorker* published a lengthy article entitled "Slippery Business" which

details the sordid history of olive oil fraud in Italy.

6

35.     Later that year, an American supermarket chain Shoprite recalled certain olive oils after

it was discovered that they were counterfeit.

36.     In 2007, the State of Connecticut began a testing program, which resulted in the

following conclusion "[w]e were coming across a lot of products labeled as EVOO that

contained up to 90% soybean oil".

37.     Also in 2008, the *Daily Telegraph* published an article "Italian Police Crack Down on

Olive Oil fraud' which should have been encouraging but 12 years after this scandal first

became public "Operation Golden Oil", which employed 400 police officers, arrested 23

people and confiscated 85 farms for importing foreign oils that were then packaged and re-

exported as Italian EVOO

38.     The Farmer's Union admitted that 50% of all Italian oil was made from olives with an

unknown provenance. Of 707 producers investigated 205 were adulterating their products or

falsely labeling their bottles.   In April 2008, *The Guardian* published an article referring to the

growing embarrassment in Italy regarding contaminated or counterfeit foods:

> "It looked like extra virgin olive oil. It even tasted and smelt like EVOO.
> But the alluring, yellowy green liquid that consumers in Germany,
> Switzerland and the US would have trickled over their salads was actually
> oil made from soya beans or sunflower seeds - some of it genetically
> modified - mixed with beta carotene and industrial chlorophyll. After the
> discovery in recent months of dioxin in mozzarella and added ethanol in
> wine, officials yesterday hastened to reassure consumers in the wake of
> yet another Italian food scandal. On Monday, police arrested 39 people
> and impounded more than 25,000 liters of counterfeit extra virgin oil. It
> was due to be exported, or marketed in Italy, in bottles bearing the labels
> of non-existent companies."

39.     In April 2008 another operation impounded seven olive oil plants and arrested 40 people

in nine provinces of northern and southern Italy for adding chlorophyll to sunflower and

soybean oil and selling it as extra virgin olive oil both in Italy and abroad. Twenty-Five

7

thousand liters of the fake oil were seized and prevented from being exported.

40.     On December 22, 2008 the Guardia Civil in La Rioja (Spain) warned about the possible sale of adulterated olive oil in the area. This warning came after 550 liters of oil was found in a large container labeled "Astipumante 1510" in Rincon de Soto and after the theft of 1750 liters of oil was reported in the area on December 18, 2008.

41.     In short, the olive oil industry has had ample notice of the potential for fraud and/or mislabeling of EVOO

42.     Such notice, however, failed to translate into any results when EVOO sold in the United States was tested for purity.

43.     In early 2010, olive oil researchers at UC Davis conducted testing and published results (the "UC Davis Study") of olive oil labeled as extra virgin and distributed in the U.S. by several olive oil companies.

44.     Included in the UC Davis Study was the Bertolli brand of olive oil that was sold by Defendant to Plaintiff and DC Consumers.

45.     The researchers employed standardized olive oil testing methodologies for determining whether the samples met the extra virgin olive oil grade.

46.     The UC Davis Study also performed more advanced techniques for determining whether the samples met the extra virgin olive oil grade.

47.     The UC Davis Study revealed that 90% of imported brands tested, including Bertolli, do not meet the standards for EVOO.

48.     Despite this finding, Defendant nonetheless has continued selling mislabeled olive oil to DC Consumers.

49.     Defendant knows, or should know, that its product labeled as "Extra Virgin" do not

8

meet the state, national or international standards for "Extra Virgin".

50.     Class members have been and will continue to be deceived or misled by Defendant's deceptive representations. Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, were of a certain quality and had certain benefits, when in fact, they do not.

51.     As a result of Defendant's deceptive and unlawful representations, consumers - including members of the proposed Class - have purchased products that do not perform as advertised.

52.     Plaintiff brings this action on behalf of himself and other similarly situated consumers who purchased the Products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the product. Based on the CPPA, Plaintiff seeks injunctive, monetary and restitutionary relief for consumers who purchased the product.

53.     Plaintiff also brings this action on behalf of himself and other similarly situated DC consumers who have purchased the product. Plaintiff seeks to halt Defendant's unlawful sale of the products in violation of applicable FDA law and regulations and the CPPA and also seeks full restitution of Plaintiffs and other DC consumers' full purchase price.

**Class Allegations**

54.     This action has been brought and may be maintained as a class action pursuant to Superior Court Rule of Civil Procedure 23 because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

55.     **Relevant Time Period:** The relevant time period is defined as the time period beginning

9

three years prior to the filing of this action until judgement is entered.

56.    **Class Definition**All persons who reside in the District of Columbia. currently or

formerly and who purchased the Product in the District of Columbia during the relevant time period.

57.    Excluded from the class are:(1) the Defendants, their subsidiaries, and their legal

representatives, officers, directors, assigns and successors; and (2) all state and/or federal court judges

who may preside over this case, their staff, and their immediate family members.

58.    Numerosity:    The class members are so numerous that the individuals joinder of each

individual class member is impractical. While Plaintiff does not currently know the exact number of

class members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds

the minimum required for numerosity under DC law.

59.    Commonality and Predominance:  Common questions of law and fact exist as to all class

members and predominate over any questions which affect only individual class members.

60.    These common questions include, but are not limited to:

(a) Whether  Defendant contributed to, committed, or is responsible for the conduct alleged

herein;

(b) Whether  Defendant's conduct constitutes the violations of law alleged herein;

(c) Whether  Defendant acted willfully, recklessly, negligently, or with gross negligence in the

violations of laws alleged herein;

(d). Whether Class Members are entitled to injunctive relief;

(e). Whether Class Members are entitled to restitution and damages; and (f) Whether the

Defendant's conduct violated the various statutes and common law causes of action sets forth

*infra* and whether Plaintiff and the Class Members are entitled to relief, and the amount and

nature of such relief in the form of an injunction and /or restitution.

10

**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**
**Section 3904(x)**

61.     Plaintiff incorporates the allegations of paragraphs 1 through 58 as though fully set forth herein, and alleges further:

62.     As noted above, the CPPA, §28-3904, provides that is it a violation "whether or not any consumer is in fact mislead, deceived or damaged thereby,", for any person to, *inter alia,* "sell consumer goods in a condition or manner not consistent with state or federal law."

63.     Section 313 of the D.C. UCC (DC Code § 28:313 provides:

(1) Express warranties by the seller are created as follows:

> (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and become part of the basis of the bargain creates an express warranty that the goods shall conform the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation does not create a warranty.

64.     D.C. Code § 28-314 provides:

> (a) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section, the serving for value of food or drink to be consumers either on the premises or elsewhere is a sale.

> (b) Goods to be merchantable must be at least such as . . .

> ( i ) In the case of fungible goods, are of fair average quality

11

within the description; and

(ii) Are fit for the ordinary purposes for which such goods are used; and

(iii) Are adequately contained, packaged, and labeled as the agreement may require; and

(iv) Conform to the promises or affirmations of fact made on the container or label, if any.

65.     Plaintiff and DC consumers have purchased the Products from the Defendant. The above-referenced warranties apply to the Products. Defendant has failed to honor these warranties.

66.     The Products are not merchantable because they are neither fit for the ordinary purpose for which such good are not, not conforms to the promises or affirmations covered.

67.     28:2-607 (3) (A) requires that a buyer must within a "reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;"

68.     Plaintiff's counsel, on behalf of them and the DC Public, have given such notice

69.     Defendant's breaches of its Express Warranties and the Implied Warranty of Merchantability, and its  sale of consumer goods in a condition and in a manner inconsistent with D.C. law and contrary to the operation and requirements of federal law constitute unlawful trade practices, which violate the rights of Class Members and D.C. consumers protected by the CPPA. D.C. Code § 28-3904(x).

## Count 2 –
## Violations of the CPPA –
## Various subsections

70.     Plaintiff incorporate the allegations of paragraphs 1 through 58 as though fully set forth herein, and alleges further:

71.     By marketing the Product in the manner described above, the Defendant violated the various provisions of Section 3904 of the CPPA, set forth in more detail in paragraph 13, page 2 above.

72.     Such violations are actionable under the CPPA, and make the relief requested below appropriate.

## Count 3
## Violations of the DC Commercial Code

73.     Plaintiff incorporates the allegations of paragraphs 1 through 58 as though fully set forth herein, in particular those with respect to the DC Commercial Code, and alleges further

74.     The breaches of the DC Commercial Code as set forth above constitute an independent cause of action, for which Class Members, on behalf of the DC General Public, seeks damages as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, as to Counts 1-2 of the Complaint, Plaintiff, on behalf of the general public of the District of Columbia, asks this court to award:

statutory or actual damages, trebled, except that in no case does any individual Plaintiff seek an amount in excess of $74,000;

disgorgement of profits obtained through the sales of the Covered Products in the District of Columbia;

attorneys' fees; and

an injunction against Defendants' violations of the CPPA; and

as to Count 3 monetary damages for monies wrongfully obtained by the Defendants from the DC General Public

13

any other relief this court deems just and proper.

Respectfully Submitted

*Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law
DC Bar No 445135
1701 16th Street, N.W
Suite 211
Washington DC   20009
Tel: 202.338.0818
T.C. 202.234.0892
tcw19law@gmail.com

See back of receipt for your chance
to win $1000 ID #:7MSDLS228D52

# Walmart

**Save money. Live better.**

SUPERCENTER
202-719-2110 Mgr:HERB GRAINER
99 H Street NW, Washington,DC 20001
ST# 05941 OP# 009043 TE# 43 TR# 05560
BEVERAGE     0D7800000201 F    2.48 X
REPELLENT    004650022398      5.88 X
BERTOLLI EV  004179021426 F    8.75 O
                SUBTOTAL       17.11
       TAX 1  5.750 %           0.48
                  TOTAL        17.59
              MCARD TEND       17.59
MASTERCARD- 7627  I 1 APPR#07263C
REF # 814400657426
PAYMENT SERVICE - A
AID A0000000041010
TC DF8ABBD9E7147062
TERMINAL # SC010188
*NO SIGNATURE REQUIRED
        05/24/18    16:26:31
             CHANGE DUE    0.00
           # ITEMS SOLD 3
      TC# 9114 8971 7914 2975 752



Low Prices You Can Trust. Every Day.
        05/24/18    16:26:32
        ***CUSTOMER COPY***
Use Walmart Pay to save your receipts.



# Exhibit A







Exhibit A





**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Kevin Fahey et al*
_____
                                                          Plaintiff

                                                          Case Number | **2018 CA 004842 B**
Deoleo USA Inc
7557 Rambler Road, Suite 700
Dallas TX   75231
                                          _____
                                          fendant

### SUMMONS

To the above named Defendant:

　　　You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

　　　You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Thomas C. Willcox*
_____
Name of Plaintiff's Attorney

*1701 16th Street, N.W., Suite 211*                    By _____
_____
Address

*Washington DC  20009*
_____

*202.338.0818*                                                   Date _____07/10/2018_____
_____
Telephone

如需翻译, 请打电话 (202) 879-4828　　　Veuillez appeler au (202) 879-4828 pour une traduction　　　Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요　　　 የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሱ

*Clerk of the Court*

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

　　　If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                         CASUM.doc



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

A. KEVIN FAHEY
Vs.
DELEO USA INC

C.A. No.     2018 CA 004842 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge FLORENCE Y PAN
Date:  July 10, 2018
Initial Conference: 9:30 am, Friday, October 12, 2018
Location:  Courtroom 415
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

CAIO-60

# ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin