IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A. KEVIN FAHEY,<br><br>On behalf of the General Public of the District of Columbia<br><br>          Plaintiff,<br><br>    v.<br><br>DEOLEO USA, INC.,<br><br>          Defendant. | Civil Action No. 1:18-cv-02047-CRC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT DEOLEO USA, INC.'S MOTION TO DISMISS COMPLAINT**

Plaintiff A. Kevin Fahey ("Plaintiff") purports to bring this action on behalf of himself and the general public in the District of Columbia under the private attorney general provision of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.*, alleging that Bertolli Extra Virgin Olive Oil ("EVOO") is not truly "extra virgin." But the slate is far from clean in this case. On May 23, 2014, Scott Koller and others, on behalf of a nation-wide class, brought similar state consumer protection actions against Defendant Deoleo USA, Inc. ("Defendant") for sales of Bertolli EVOO that were allegedly not "extra virgin." On March 26, 2018, Defendant filed a settlement agreement. On April 16, the District Court granted a motion for preliminary approval of the settlement. On May 18, 2018, an online notice and press release was issued, that included advertisement on two leading class action settlement websites.[1] Just six days later, Plaintiff alleges that he purchased a single bottle of Bertolli

---

[1] These facts are stated in the Declaration of Steven Weisbrot, Esq., *Koller, et al. v. Med Foods, Inc., et al.*, Case No. 14:-cv-2400 (RS), ECF 160-3 (filed June 28, 2018), a copy of which is attached hereto as Exhibit 1 for the Court's convenience. The Court can take judicial notice of

EVOO.  Plaintiff's copycat lawsuit was filed on July 8, 2018, and Defendant was served on August 6, 2018.  Plaintiff's only support for his allegation that the single bottle of Bertolli EVOO he purchased is not "extra virgin" is that <u>eight (8) years ago</u>, in 2010, the University of California Davis ("UC Davis") issued a report which asserted that testing done in Australia showed that three bottles of Bertolli EVOO sold in California in 2010 met the chemical requirements to properly be labeled "extra virgin" but did not all pass a smell test.  On the basis of this statement in the 2010 UC Davis Report, Plaintiff alleges that all bottles of Bertolli EVOO sold in the District of Columbia over the past three years are not properly labeled "extra virgin."  Without alleging anything wrong with the Bertolli EVOO he purchased, this lawsuit is nothing but a meritless, carefully timed shakedown.

Plaintiff's claims should be dismissed for multiple reasons, not least because Plaintiff fails to properly state any claim upon which relief may be granted.  The Complaint alleges no facts that plausibly demonstrate that any Bertolli EVOO sold in the District of Columbia during the stated class period—July 8, 2015 to present—was not properly labeled "extra virgin."  The Complaint does not allege that the Bertolli EVOO purchased by Plaintiff, or any District of Columbia consumer for that matter, was tested and failed to meet applicable standards, made anyone sick, tasted bad, or was not "good enough" to be labeled extra virgin.  The 2010 UC Davis Report is the sole basis for Plaintiff's claims, but there is no factual nexus whatsoever between the three California samples tested in 2010 in the UC Davis Report and the one bottle of olive oil that Plaintiff allegedly purchased in the District of Columbia <u>eight years later</u> in May 2018.  In short, even if all the findings in the UC Davis Report are accepted as true, it is implausible to conclude on the basis of the UC Davis Report, that any bottle of Bertolli EVOO

---

filings in this docket.  *See United States v. Am. Tel. & Tel. Co.*, 83 F.R.D. 323, 333 (D.D.C. 1979) ("judicial notice may be taken of judicial proceedings").

purchased in the District of Columbia during the period from July 10, 2015 to present was not true grade extra virgin.

Finally, Plaintiff's class claims are barred by the aforementioned Koller Settlement Agreement entered on August 29, 2018, by the United States District Court for the Northern District of California, in which a nation-wide class released Defendant of all future claims based on purchases of olive oil prior to April 16, 2018. Though Plaintiff's claims should be dismissed for failure to state a claim, any class claim purporting to include District of Columbia residents arising from the purchase of Bertolli EVOO prior to April 16, 2018 is barred by this settlement agreement.

For all these reasons, and as more fully set forth below, Defendant respectfully requests that the Court grant this Motion and dismiss the Complaint with prejudice in its entirety.

## I.     FACTUAL BACKGROUND

For the purpose of this motion only, the allegations of Plaintiff's Complaint are accepted as true, and can be summarized as follows:

### A.     The 2010 UC Davis Report

The 2010 UC Davis Report, funded by California olive producers and publicly released on July 14, 2010, reported the results of testing conducted on samples of imported and California olive oils purchased in three California cities, including EVOO sold under the Bertolli brand. *See* Compl. ¶ 43–44. The Report is attached as Exhibit 2 to this Memorandum.[2]

The Report states that it used "testing methods" adopted by the IOC and the USDA for determining whether a product is extra virgin. Ex. 2 at 5–6.[3] The Report also employed other,

---

[2] The UC Davis Report is referenced throughout the Complaint and particular findings in the report are alleged. *See* Compl. ¶¶ 3, 43–47.
[3] The Complaint concedes that prior to October 25, 2010, the USDA did not have any standard for "extra virgin" olive oil. *See* Compl. ¶ 24. The standards that took effect in October 2010 are

non-IOC-sanctioned techniques used in Germany and Australia.  *Id.* at 4.  As the Report admits, those other methods "have not been adopted by the IOC and USDA."  *Id.* at 5–6.  Plaintiff does not allege how such techniques are relevant to olive oil sold in California, the District of Columbia, or anywhere in the United States.

The Report is based on the results of testing on samples from three bottles of each brand purchased at three retail locations in California.  *Id.* at 6.  The table of results, however, is based on a ***total of three samples*** of each brand (one from each of three California cities) tested in an Australian laboratory.  *Id.* at 7 ("the UC Davis olive oil research project team shipped three samples of each imported brand . . . to the Australian Oils Research Laboratory . . . see Table 3 for a summary of the Australian results upon which we base the following findings").  This extremely limited sampling indicated that ***all*** of the three Bertolli EVOO samples tested ***met or exceeded all*** of the objective IOC-sanctioned chemical criteria for EVOO.  *Id.* at 8, tbl 3.[4]  The IOC defines extra virgin as "virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams, and the other characteristics of which correspond to those fixed for this category in this standard."  The Bertolli samples tested in the UC Davis Report allegedly fell short on the "sensory" test—which evaluates an olive oil's "fruitiness," among other features.  *Id.* at 8.[5]

---

strictly voluntary.  75 Fed. Reg. 22366 (Apr. 28, 2010) ("the use of the U.S. grade standards is voluntary").

[4] The objective, chemical criteria are: Peroxide Value (PV); UV Absorption (K232, K268, and ΔK); Free Fatty Acids (FFA); and Stigmastadiene (Stigma). Ex. 2 at 5, tbl 1.

[5] To the extent the Report concluded applicable standards were not satisfied, its findings have been challenged by the IOC—the very body that promulgated the only recognized standards Plaintiff alleges the Bertolli brand purportedly did not meet.  *See* Statement Issued by the Chemistry Expert Group of the International Olive Council on the Report Produced by the UC Davis Olive Centre (2010), available at http://www.internationaloliveoil.org/ documents/viewfile/4483-chemistexpertgroup-pdf.  In particular, the IOC questioned the reliability of the testing methods used in the Report, stating that the number of samples tested

B.     **Plaintiff's Allegations**

Based solely on the 2010 UC Davis Report, Plaintiff alleges that every bottle of Bertolli EVOO sold in the District of Columbia must not be "extra virgin," and asserts causes of action under the "private attorney general" provision of the CPPA. *See generally* Compl.; *see also id.* ¶¶ 28, 31–40, 43. On May 24, 2018, Plaintiff alleges he purchased a single bottle of Bertolli EVOO at a Wal-Mart in Washington, D.C. *Id.* ¶ 18. Based on allegations that "[d]espite" the findings of the UC Davis report, "Defendant nonetheless has continued selling mislabeled olive oil to DC Consumers" and "Defendant knows, or should know, that its product labeled as 'Extra Virgin' do [sic] not meet the state, national or international standards for "Extra Virgin," he concludes that "[c]lass members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, were of a certain quality and had certain benefits, when in fact, they do not." *Id.* ¶¶ 48–50.

Count 1 of the Complaint alleges a violation of the CPPA, D.C. Code § 28-3904(x), for alleged breaches of express and implied warranties; Count 2 alleges a violation of subsections (a), (b), (d), (e), (f), (f-1), and (h) of the CPPA; and Count 3 alleges violations of the "DC Commercial Code" as an independent cause of action.

The Complaint is notable for what it does ***not*** allege. Plaintiff alleges nothing of the quality or taste of *his* purchased bottle of olive oil, nor does he even allege that he opened the bottle. The Complaint fails to state that the olive oil product purchased by Plaintiff—much less

---

was "not statistically significant of the olive oil imported into the USA, because samples traded in three cities of California are not representative of the whole olive oil market in the USA." *Id.* at 1. The IOC also criticized the Report for failing to apply tests "according to the standardized procedure described in the method," resulting in "samples [being] misclassified by the sensory analysis." *Id.* at 2.

of all District of Columbia consumers—has been tested and failed to meet "extra virgin" standards. With respect to Plaintiff's reliance on the UC Davis Report, Plaintiff never alleges that the limited samples of Bertolli olive oil purchased at stores in three California cities and tested in the UC Davis Report <u>more than eight years ago</u> are the same as the Bertolli EVOO that Plaintiff—or any other consumer—bought in the District of Columbia. Specifically, Plaintiff fails to allege: (i) that the Bertolli olive oil product he purchased in the District of Columbia came from the same lots of olive oil tested in the Report (or any other prior study that Plaintiff references in the Complaint); or (ii) that the bottle of Bertolli EVOO he purchased was identical in physical and chemical characteristics to those tested in the Report.

### C.     The Koller Settlement Agreement

Plaintiff brings his action as a purported "class action" to include "[a]ll persons who reside in the District of Columbia currently or formerly and who purchased the Product in the District of Columbia" during the last three years. *See* Compl. ¶¶ 54–56.[6] However, a Class Action Settlement Agreement was entered into on March 26, 2018 and the settlement judgment was entered by the United States District Court for the Northern District of California, Case No. 3:14-cv-02400-RS, ECF No. 169, on August 29, 2018. The Order Granting Final Approval of Class Action Settlement and Judgment is attached hereto as Exhibit 3.[7]

The District Court, in relevant part, certified the settlement class as "[a]ll persons who . . . between May 23, 2010 and April 16, 2018, purchased, in the United States, any of the Extra Virgin Olive Oil Products [excluding those purchased for the purpose of resale.] . . . 'Extra Virgin Olive Oil Product' means bottles of Bertolli Extra Virgin olive oil, except for those

---

[6] Defendant reserves all argument against the legitimacy of the class allegations.
[7] The Court can take judicial notice of the Koller Settlement Agreement. *See United States v. Am. Tel. & Tel. Co.*, 83 F.R.D. 323, 333 (D.D.C. 1979) ("judicial notice may be taken of judicial proceedings").

bearing labels 'Organic,' 'Robusto,' 'Gentile,' or 'Fragrante.'" Ex. 3 at 2–3. The Order explicitly states that the Settlement Class shall be barred by future claims as follows:

> Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims, including any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations or claims that the Products were marketed or labeled as "Imported From Italy" and/or "Extra Virgin," except that there shall be no release of (1) claims for personal injury allegedly arising out of use of the Products or (2) any defense, cross-claim or counter-claim in any action initiated by any of the Released Parties against any Settlement Class Member.
>
> . . . In addition, Settlement Class Members shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth in paragraph 13 of this Order.

*Id.* at 8.

## II.    LEGAL STANDARD

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12 motion, courts take factual allegations as true, but they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Once legal

conclusions and unsupported inferences are properly disregarded, if the remaining, well-pleaded factual allegations "could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation omitted).

**III.   ARGUMENT**

Plaintiff makes the same allegation to support both his individual and CPPA class claims: because the 2010 UC Davis Report allegedly found, more than eight years ago, that certain limited samples of EVOO sold in three cities in California failed to meet certain standards, it should be inferred that *every bottle* of Bertolli EVOO sold in the District of Columbia does not meet the standards for EVOO. All of Plaintiff's claims should be dismissed. First, Plaintiff has failed to state any claim for relief because his inference that every Bertolli EVOO is in fact substandard is unsupported by any plausible factual allegations. Second, even if Plaintiff's claims were to survive a motion to dismiss, the Koller Settlement Agreement bars all of Plaintiff's class allegations to the extent they arise from alleged sales of Bertolli EVOO prior to April 16, 2018.

**A.     The Complaint Fails to State a Claim Upon Which Relief May Be Granted**

The Complaint should be dismissed because Plaintiff has failed to plead any facts upon which it plausibly could be concluded that any bottle of Bertolli EVOO sold in the District of Columbia was not true grade "extra virgin." Specifically, Plaintiff does not allege that even one bottle of EVOO sold in the District of Columbia was tested by a qualified laboratory and found to be deficient, that it tasted or smelled bad, or that it was not sufficiently "fruity," made anyone ill, or in any way was not full-flavored and enjoyable.

Instead, the 2010 UC Davis Report is the sole basis for Plaintiff's claims. As set forth above, this is insufficient because the results of one study testing three bottles of olive oil in

8

California eight years ago have no bearing whatsoever on whether any, much less all, bottles of Bertolli EVOO sold in the District of Columbia in the past three years are extra virgin. Indeed, Plaintiff does not even allege which standards a bottle of olive oil must meet in order to be properly labeled "extra virgin." The Complaint alludes to at least four possible standards for "extra virgin." *See* Compl. ¶¶ 21–22 (IOC), ¶¶ 23–25 (USDA), ¶ 26 (the state of California). But Plaintiff fails to allege which applies to Defendant's olive oil and which standard forms the basis for his challenge to Defendant's olive oil quality.

In addition, the 2010 UC Davis Report confirmed that the chemical criteria for Bertolli to qualify as EVOO was satisfied for the samples tested in that report, and only the sensory test presented any issues. *See* Ex. 2 at 8, tbl 3. While the samples were deemed not to taste "good enough" to be considered "extra virgin," a sensory test is a subjective measurement based on the sensory perception of "taste testers." This is unverifiable and driven by the personal tastes and perceptions of the taster. The IOC recognizes this and therefore requires that if the grade stated on a label allegedly does not match the grade assigned by a sensory analysis, a second analysis must be performed by a different taste panel authorized by the IOC. *See* Statement Issued by the Chemistry Expert Group of the International Olive Counsel on the Report Produced by the UC Davis Olive Centre (2010), http://www. intemationaloliveoil .org/ documents/viewfile/ 4483-chemistexpertgroup-pdf. Similarly, the USDA's voluntary regulations regarding olive oil grades specify that a minimum of three samples per lot are required to make any determination about the quality of a lot.[8] The UC Davis Report, however, did not include multiple samples for the same lot that failed to meet the sensory test. Accordingly, even if the 2010 UC Davis Report had

---

[8] *See* 7 C.F.R. § 52.38, tbl III. For lots of 18,001 to 56,000 units, 13 or more samples per lot are necessary, and a lot is considered compliant as long as the number of failures does not exceed the applicable acceptance number indicated in the sampling plans (for 13 samples, up to 2 samples can deviate from the standard, by up to one grade). *Id.*

tested olive oil sold in the District of Columbia during the relevant time period, which it most certainly does not, it would not establish that any olive oil tested therein did not meet IOC or USDA standards.

Finally, and most importantly, Plaintiff provides no allegations that would permit extrapolating from the results of three California samples tested in 2010 to every single bottle of Bertolli EVOO sold in the District of Columbia in the past three years. Plaintiff pleads no facts tying the olive oil tested in the study to the olive oil at issue in the instant suit other than the brand name, which is insufficient. Olive oil is not a mass produced plastic object, but a living, breathing organic product. Olive oil is produced in individual "lots", each of which is assigned a unique number. *See* Compl. Ex. A. Each lot may be slightly different than the next.[9] This is confirmed by the Bertolli EVOO label exhibited to the Complaint, which identifies the individual lot number (L8404M HO 851), "Best if Sold By" date (July 24, 2019) and countries of origin (AR, IT, ES, TN) for the bottle of EVOO allegedly purchased by Plaintiff on May 24, 2018. *See* Compl. Ex. A. This is further confirmed by the very 2010 UC Davis Report on which Plaintiff bases his claims. Each of the three Bertolli samples tested in the study had slightly different values on the varying criteria. *See* Ex. 2 at 8. Plaintiff does not allege that the any of the Bertolli EVOO in the District of Columbia came from the same lot as, or was similar in physical and chemical characteristics to, any of the oil tested in the Report.

And Plaintiff cannot make any such allegations. It is facially implausible to say EVOO in 2010 is the same as EVOO in 2018. It is equally implausible that *any*, much less *every*, bottle of Bertolli EVOO sold in the District of Columbia was deficient simply because samples taken

---

[9] As the USDA has recognized, each harvest and lot is potentially different than the next. *See* Standards for Grades of Olive Oil and Olive-Pomace Oil at § 52.1541 (Oct. 25, 2010) (USDA's new voluntary certification program certifies olive oil by performing tests on individuals lots).

from bottles sitting on random store shelves in California <u>more than eight years ago</u> may have been found in the UC Davis Report to not pass a certain sensory test.  Even permitting Plaintiff to hang his hat on the UC Davis Report, and taking all of the information in the Report as true for the purposes of this Motion, Plaintiff has still failed to state a claim upon which relief can be granted.  There are no facts to which Plaintiff can amend his Complaint that would make relief plausible.

Indeed, the U.S. Southern District of Florida dismissed two nearly identical consolidated cases for failure to state a claim with almost exactly the same allegations about EVOO and its advertisement as "extra virgin,"—including allegations specifically about the Bertolli brand and the UC Davis Report.  *See Meyer v. Colavita USA, L.L.C.*, 2011 WL 13216980 (S.D. Fla Sept. 13, 2011).  In *Meyer*, both complaints alleged violations of the Florida Deceptive and Unfair Trade Practices Act for breach of express warranty and marketing "fake" EVOO.  *Id.* at *1.  Plaintiffs too based their claims on the 2010 UC Davis Report.  *Id.* at *2.  The Court dismissed the claims because "Plaintiffs fail to plead anything other than unwarranted deduction of fact in support of their claims that Defendants have engaged in a deceptive act or unfair practice. . . . Plaintiffs support their claims with speculation and unwarranted extrapolation from the UC Davis [Report]'s findings."  *Id.* at *5.  The court took issue with the Report, *id.*, and stated that, even setting aside the Report's flaws, Plaintiffs merely "make numerous conclusory allegations and assumptions based upon the UC Davis [Report] but without alleging any facts presenting a nexus or connection to Florida.  There are no allegations that anyone in Florida purchased extra virgin olive [oil] that tasted bad, or was tested and failed to meet certain standards, or was in any other way 'fake.'"  *Id.*  For all the same reasons, the Court here should dismiss Plaintiff's claims.

Because there are no factual allegations to support Plaintiff's conclusion that Bertolli EVOO is incorrectly labeled as "extra virgin," there is no basis for his CPPA claims in Count 1[10] and Count 2,[11] nor his derivative DC Commercial Code violation in Count 3.  While Plaintiff's *factual* allegations must be taken as true when evaluating a motion to dismiss, the Court "need not accept *inferences* drawn by plaintiff" where, as here, "such inferences are unsupported by the facts set out in the complaint."  *See Kowal*, 305 U.S. App. D.C. at 65, 16 F.3d at 1276 (emphasis added); *accord Iqbal*, 129 S. Ct. at 1949 ("[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  When all such inferences are properly disregarded, there are no factual allegations left to support the claims in Plaintiff's Complaint, and it therefore must be dismissed.

---

[10] Because Plaintiff has not adequately pled that the olive oil sold was not, in fact, extra virgin, he thus has no basis on which to make his Count 1 CPPA breach of warranty claims: that Bertolli EVOO is in a condition or manner not consistent with that warranted by the DC Code or federal law (in violation of D.C. Code § 29-3904(x)).

[11] Because Plaintiff has not adequately pled that the olive oil sold was not, in fact, extra virgin, he thus has no basis on which make his Count 2 CPPA deceptive trade practices claims: that Defendant has represented that the olive oil has some certification that it does not actually have (in violation of D.C. Code § 29-3904(a)); that Defendant represented that goods have characteristics uses, or benefits that they do not have (in violation of D.C. Code § 29-3904(b)); that Defendant represented that the olive oil was of a particular quality when in fact it was of another (in violation of D.C. Code § 29-3904(d)); that Defendant misrepresented the material fact that the olive oil did not meet extra virgin standards, which misrepresentation had a tendency to mislead (in violation of D.C. Code § 29-3904(e)); that Defendant failed to state the material fact that the olive oil did not met extra virgin standards, and the failure tended to mislead (in violation of D.C. Code § 29-3904(f)); that Defendant used innuendo or ambiguity as to a material fact which has a tendency to mislead (in violation of D.C. Code § 29-3904(f-1)); or that Defendant advertised the olive oil as extra virgin without the intent to sell extra virgin olive oil (in violation of D.C. Code § 29-3904(h)).  In spelling out how each of Plaintiff's claims fail, Defendant has done the application of these subsections for Plaintiff as Plaintiff provides generalized and conclusory allegations related to Count 2: he incorporates "various subsections" of CPPA without stating how each provision applies or has been violated.

### C.     The Koller Settlement Bars Class Claims Prior to April 16, 2018

The claims on which this lawsuit is based have played out before and bar Plaintiff's class claims here.  As set out above, the Koller Settlement stated that Settlement Class Members of the nation-wide class, which includes residents of the District of Columbia, "shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims, including any and all claims . . . ."  Ex. 3 at 8.  And, Settlement Class Members shall "be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542, *and any similar law of any state or territory of the United States or principle of common law . . . .*"  *Id.* (emphasis added).  In unambiguous terms, the Settlement Agreement precludes potential class members to Plaintiff's CPPA action who purchased Bertolli EVOO on or prior to April 16, 2018.  *See id.*  Courts routinely dismiss claims subject to the release of a prior class action settlement agreement.  *See, e.g.*, *Johnson v. Ashcroft*, No. 02-1745 (RMU), 2005 WL 2064095, at *3 (D.D.C. Aug. 25, 2005) (res judicata precluded claims where terms of the settlement agreements explicitly barred future claims, including "any cause of action that could have been asserted" before the effective date of the agreement); *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 451 (5th Cir. 2016) (res judicata precluded claims where prior opt out class action settlement existed and parties did not opt out); *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1290 (11th Cir. 2007) (res judicata precluded claims where prior class action settlement was entered as judgement); *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 59 (1st Cir. 2004) (finding release of "any and all claims . . . of any nature whatsoever ascertained or unascertained, suspected or unsuspected, existing or claimed to exist . . . that have been or could have been asserted arising out of any purchase or performance of a [defendant's product] . . . that might in the future be asserted" to be "[u]nquestionably . . . sufficiently broad"

to preclude party's current complaint);  *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800 (8th Cir. 2004) (res judicata precluded claims released in prior class action settlement).

## IV.  CONCLUSION

WHERFORE, Defendant respectfully requests that the Court grant this motion and dismiss the Complaint in its entirety with prejudice.

DATED:  September 10, 2018

Respectfully submitted,

*/s/ Matthew H. Kirtland*
Matthew Kirtland (DC Bar No. 456006)
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, D.C. 20001-4501
Telephone: (202) 662-0200
Fax: (202) 662-4643
matthew.kirtland@nortonrosefulbright.com

Jeffrey B. Margulies (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
Telephone: (213) 892-9286
Fax: (213) 892-9494
jeff.margulies@nortonrosefulbright.com

*Attorneys for Defendant Deoleo USA, Inc.*