IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A KEVIN FAHEY.,                                   Civil Action No. 18-2047 CRC
                                                  Judge Christopher Cooper
On behalf of the General Public of the District
of Columbia Plaintiff, v.

DEOLEO USA, INC., Defendant.


**OPPOSITION OF THE PLAINTIFF TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Defendants raises two issues in its Motion.  First, the Defendant contends that the UC

Davis Report findings are inadequate to survive a Motion to Dismiss a claim that the Defendant

markets mislabeled EVOO in the District of Columbia.  Second, the Defendant contend anything

other than a testing of all of the Defendant's EVOO bottles in the District of Columbia is

insufficient to any conclusion as to whether all of Defendant's sales in the District of Columbia

are mislabeled.  p

To the contrary, the case law supports the proposition that a report based in one

jurisdiction can be the basis for liability in other jurisdictions.  Second, a DC court has already

held that the extent to which EVOO testing of selected bottles can be used to infer jurisdiction

wide mislabeling is a question for the jury.

**COUNTERSTATEMENT OF FACTS**

The Plaintiff does not dispute the basic facts as set for the Defendant in its Motion to

Dismiss ("MTD").  The Plaintiff wishes to address certain statements made therein.

In the MTD, the Defendant takes every effort to disparage the 2011 UC Davis Report ("the Report"). MTD at 6-7.   However, the MTD does not address that statement in the Report that "[t[he analytical methods used in this study . . include the chemistry **and sensory testing** methods adopted by the IOC and USDA".  Report at 8.

The Complaint is based on the findings of the Report  To date, none of the makers of the olive oil have sued UC Davis for, if the Defendant is correct about the flaws of the Report, clearly libel.

The Defendant does not address the fact each of its bottles of EVOO states "Extra Virgin Olive Oil".  The Defendant does not explain why its bottles of EVOO should vary from state to state.  As is explained below, such uniform labeling is consistent with the case law that it is permissible to infer from a study in one state that

## ARGUMENT

I.      The Complaint States A Claim on Which Relief May be granted.

Two critical points are expanded on below: the Report is a sufficient basis on which to base the inference the Defendant is selling olive oil labeled EVOO which is not such in the District of Columbia.  Second, the Report is a sufficient basis to extend any such inference to all sales of such mislabeled EVOO in the District of Columbia.

a.      The Report Is A Sufficient Basis On Which To Basis The Inference The Defendant is Selling Olive Oil Labeled EVOO Which is IN Fact Not Such In the District of Columbia

The MTD contends that  Report is not sufficient to survive a Motion to dismiss because Mr. Fahey does not provide testing for the bottle purchased.  **.**  To this end, the Defendants cite *Meyer v. Colavita USA, L.L.C.*, 2011 WL 13216980 (S.D. Fla Sept. 13, 2011), which dismissed

2

another case based on the UC Davis report on the grounds that the Report could not make any inferences outside of Florida. MTD at 11.

The Seventh Circuit's decision in *Morrison v. YTB Int'l, Inc*., 649 F.3d 533, 535-36 (7th Cir. 2011) bears on the instant issue. In *Morrison*, the plaintiffs brought suit under an Illinois statute on behalf of a nationwide class. 649 F.3d at 535. The defendant challenged the standing of class members from states other than Illinois, and the district court agreed with the defendant. Id. The Seventh Circuit explained that there was "no problem with standing" because "[p]laintiffs have standing if they have been injured, the defendants cause that injury, and the injury can be redressed by a judicial decision." 649 F.3d at 536. Because the plaintiffs demonstrated those elements of standing, "[n]othing more [was] required." Id.;

The DC Circuit, with its half a million or so residents, is not a popular jurisdiction for multi state class actions, and as a result, not a jurisdiction with much, or any, case law on whether or not studies conducted in one jurisdiction have any bearing on products sold nationwide.  However, other courts considering the issue in, for example, the Seventh Circuit, have ruled similarly.  *See Le v. Kohls Dep't Stores*, *Inc.*, 160 F. Supp. 3d 1096, 1111-14 (E.D. Wis. 2016); *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 957-58 (N.D. Ill. 2016) (Dow, J.); *Halperin v. Int'l Web Servs.*, LLC, 123 F. Supp. 3d 999, 1009 (N.D. Ill. June 5, 2015)

In *Halperin*. the court explained that the defendant's argument that the plaintiff lacked standing "to raise claims under the nine state consumer protection laws other than Illinois's" was "more accurately characterized as an attack not on Halperin's Article III standing per se . . . but rather on his ability under Rule 23 to represent the multi-state class." 123 F. Supp. 3d at 1009. The issue was therefore "best deferred to the class certification stage." *Id.*(*citing Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815,

3

831 (1999), for the proposition that the class certification issues were "logically antecedent to" the standing question

Consistent with the *Halperini* analysis, the *Meyer* ruling is eclipsed by the substantial case law that permits a complaint based on such as report to survive a motion to dismiss.  In *In Re Herbal Supplements Marketing and Sales Practices Litigation*, No 15-cv-5070 (May 19 2017, N.D Ill) ("*Supplements*"), the Plaintiffs based their complaint on three letters sent by the New York Attorney General to Target, Walmart and Walgreens on February 2 2015.  Id at *7-*8.

The letter to Target indicated that the NYAG purchased herbals supplements from three different Target locations in New York state: Ginkgo Biloba, St. John's Wort, Valerian Root, Garlic, Echinacea, and Saw Palmetto.  The NYAG informed Target that it conducted testing on the supplements, which revealed that the Ginkgo Biloba, St. John's Wort, and Valerian Root supplements (the "Affected Target Products") did not contain the ingredients listed on their labels but instead contained "adulterants and undisclosed substances that were not listed on the labels" like rice, garlic, beans, peas, wild carrot, and dracaena (the genus encompassing a common houseplant).  *Id*.

The NYAG's test results for Walgreens and Walmart were similar with respect to certain supplements. As for Walgreens, the NYAG purchased Finest Nutrition brand Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto from three Walgreens stores in New York State.  The testing revealed that five of the supplements—Gingko Biloba, St. John's Wort, Ginseng, Garlic, and Echinacea (the "Affected Walgreens Products")—"did not contain the ingredients they purported to have and were contaminated with other plant material or ingredients not listed on the products' labels." *Id* at *8.

4

With respect to Walmart, the NYAG purchased Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto from three Walmart locations in New York state. The NYAG indicated that none of the samples of Ginkgo Biloba, St. John's Wort, Ginseng, or Echinacea supplements contained those substances, and only 1/15 samples of Garlic and 3/15 samples of Saw Palmetto supplements (the "Affected Walmart Products") contained those substances.   The NYAG also reported that the supplements contained other plants not disclosed on product labels, like dracaena, wheat, cassava, and rice. Id.

The NYAG reached the conclusions relayed in its letters and press release after conducting DNA barcode testing.   In short, "DNA barcoding in herbal supplements involve[s] [selecting] a standardized region of a gene in DNA obtained from an herbal supplement, and comparing it to a known database of DNA of plants to find a match.." *Id.*

As with the Defendant in the instant case, the Defendants in *Supplements* argued that the Plaintiff's lacked standing to bring claim under the laws of the states with which they had no connection.   *Id* at *11   The Plaintiffs contended that the Defendants were improperly conflating the Article II standing inquiry with the Rule 23 inquiry, which are deferred until the Court considers Plaintiff's motion for class certification.   Id

The *Supplement* court ruled for the plaintiff.   Citing the cases referenced above, the *Supplements* court held that "plaintiffs similarly have established the elements of standing, and the Court agrees with the many courts that have concluded that Defendants' concerns are better left for the class-certification stage." [1]   *Id.*

---

[1] The Defendant bases much of the MTD on Expert testing of bottle purchased is expected in near future.  If a dismissal is based on the lack of testing, then the Plaintiff asks that such dismissal be with leave for Plaintiff to amend his complaint after such testing is completed.

The *Supplements* case applies with compelling validity to the instant action. The court therein ruled that a single set of tests to products labelled the same nationwide is sufficient for any jurisdiction. Similarly, in the instant action, contrary to the Defendant's contention, the Report is sufficient for an inference the Defendant is selling mislabeled product in the District of Columbia.

      b.     The Issue of Whether Plaintiff's Methodology for Inferring a Pattern of Mislabeling across The Entirety of The District of Columbia Should Be Resolved At Trial

In *Mostofi v. Motorahm*, DC Super Lexis 12 (DC Superior Court November 12 2013) , the Plaintiff brought a case similar to this one, alleging that the defendants were mislabeling virgin olive oil or worse as EVOO. The defendants moved for summary judgment, contending that "the results of Plaintiff's tesst of multiple EVOO samples are unreliable". The court denied the Motion for summary judgment, reasoning that "[d]efendant's arguments establish genuine disputes of material and raise issues that cannot be disposed of by summary judgment. Questions as to  . .whether the size Plaintiff used was 'to o small' , statistical significance and the relevant of samples tested after January 2011 are issued to be addressed and resolved at trial" Id at *16-17.

CONCLUSION

For the above reasons, Plaintiff Kevin Fahey asks that this court deny the Defendant's Motion to Dismiss.

6

.

Respectfully Submitted

i/s/ *Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law.
DC Bar No 445135
1701 16th Street, NW, Suite 211
Washington DC   20009
202.338.0818
C 202.617.4210
Tcw19law@gmail.com

7

CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document via PACER, which indicated that a

copy had been emailed to:

Matthew Kirtland
Norton Rose
799 9th Street, NW Suite 1000
Washington DC  20001
[Matthew.kirtand@nortonrosefulbright.com](mailto:Matthew.kirtand@nortonrosefulbright.com)


Today

October 15, 2018

*/s/ Thomas C. Willcox*
Thomas C. Willcox