# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEVIN FAHEY**,<br><br>**On behalf of the general public of the District of Columbia**,<br><br>              Plaintiff,<br><br>              v.<br><br>**DEOLEO USA, INC.**,<br><br>              Defendant. | Case No. 18-cv-2047 (CRC) |

## **MEMORANDUM OPINION**

Plaintiff Kevin Fahey contends that Defendant Deoleo USA, Inc.'s Bertolli Extra Virgin Olive Oil ("EVOO") is not actually "extra virgin." He brings this putative class action on behalf of himself and the general public of the District of Columbia, under the private attorney general provision of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901 *et seq.* Deoleo counters that Fahey's suit should be dismissed for either of two reasons—first because Fahey has failed to plead facts that could give rise to a right to relief and second because a settlement in a separate class action suit involving similar claims precludes this one. The Court will dismiss the case for the first reason and need not reach the second.

## I. Background

The relevant facts of this case start with a previous one. In May of 2014, Scott Koller filed a putative class action suit against Deoleo in the United States District Court for the

Northern District of California.[1]  Koller v. Med Foods, Inc., No. 14-CV-02400, 2015 WL 13653887, at *1 (N.D. Cal. Jan. 6, 2015) (denying motion to dismiss).  That suit involved the very claim that Mr. Fahey advances here—that the Bertolli brand EVOO is of too inferior quality to call itself "extra virgin."  Id.  That suit settled in March 2018, and in May the settlement was publicized on two prominent class action settlement websites.  See Motion to Dismiss, Ex. 1, Declaration of Steven Weisbrot ¶ 5.

Fahey, who resides in Virginia, apparently caught wind of this news.  Six days after the settlement was publicized, he purchased a bottle of Bertolli EVOO at a D.C. WalMart.  Compl. ¶ 18.  He filed suit some six weeks later in District of Columbia Superior Court.  The suit raised three claims.  Count 1 alleged that Deoleo violated CPPA's implied and express warranties provisions, D.C. Code § 28-3904; Count 2 alleged that Deoleo violated CPPA subsections (a), (b), (d), (e), (f), and (h), id. § 28-3904; and Count 3 alleged violations of the "D.C. Commercial Code," a reference to the Uniform Commercial Code provisions that the District has adopted.  See Compl. ¶¶ 61-74.  Deoleo, which is incorporated in Delaware and headquartered in Texas, removed the suit to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332.  This motion to dismiss followed, and it is now ripe for the Court's resolution.

**II.   Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

---

[1] Though the Court is limited to reviewing Plaintiff's complaint and any attachments thereto at the motion to dismiss stage, it may take judicial notice of judicial proceedings.  United States v. Am. Tel. & Tel. Co., 83 F.R.D. 323, 333 (D.D.C. 1979)

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, a court must "treat a complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and quotation omitted); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011). A court need not, however, accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor must a court accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III. Analysis

The District of Columbia Consumer Protection Procedures Act makes it unlawful "to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby[.]" D.C. Code § 28-3904. Illustrative "unfair or deceptive" practices include "represent[ing] that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have" and "represent[ing] that goods or services are of a particular standard, quality, grade, style or model, if in fact they are of another." Id. § 28-3904(a), (b). The D.C. Uniform Commercial Code, under which Fahey brings an independent cause of action, prohibits much the same. D.C. Code § 28:1-101 *et seq.*

On Deoleo's motion to dismiss, therefore, the question is whether Fahey has alleged facts that support an inference that the particular bottle of Bertolli EVOO he purchased in April 2018 contained something other than "extra virgin" olive oil. The Court concludes that he has not. Despite the complaint's lengthy catalog of the olive oil industry's purported scandals, Compl. ¶¶

3

4-9, Fahey marshals but one "fact" to substantiate his claim that *this defendant* deceptively mislabeled the bottle of extra virgin olive *Fahey* purchased in 2018: the results of a 2010 study on olive oil quality by the University of California, Davis. This meager "factual content" is not enough for "the court to draw the reasonable inference that [Deoleo] is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678.

As it sees things, the Court would have to indulge at least three major—and dubious—assumptions to draw the inference Fahey asks for here: one methodological, one temporal, and one geographic. Start with the methodological assumption: is there good reason to think the methods used in the UC Davis study can support general conclusions about the quality of Bertolli olive oil? Not really. The sample size was small—only three bottles of Bertolli EVOO were tested—and none of them came from the same "lot," which is the testing protocol called for by the United States Department of Agriculture. 7 C.F.R. § 52.38, Table III. As Deoleo points out, "[o]live oil is not a mass produced plastic object, but a living, breathing organic product" that is "produced in individual lots" with slight variations between the lots. See Def's MTD at 10 (citing Compl. Ex. A) (Bertolli EVOO label on bottle purchased by Fahey, which shows distinct lot number); id., Ex. 2 at 8 (showing three tested samples in UC Davis study had slightly different chemical composition). What is more, the results were inconclusive. The Bertolli EVOO samples satisfied the chemical criteria needed to be considered "extra virgin" but a taste test concluded the samples were merely "virgin." Def's MTD, Ex. 2 at 8, Table 3. Yet taste tests, by their nature, are subjective; that is why the international body that establishes olive oil

quality standards—the very same standards used in the UC Davis study—concluded that the UC Davis study should have convened a new panel of testers to verify the impression of the first.[2]

Now add a temporal assumption to the methodological concerns. The UC Davis study was conducted eight years before Fahey purchased his bottle of Bertolli EVOO. Even if nothing at all changed in Deoleo's processes over the last eight years, if a given sample of olive oil can be expected to vary from lot to lot, it stands to reason that it will do so from season to season and from year to year. Fahey offers no explanation for why the testing done on three bottles of Bertolli EVOO eight years ago should tell us anything about the quality of the Bertolli EVOO on store shelves today.

Finally, the geographic assumption. The UC Davis study tested three bottles of Bertolli EVOO purchased in California, but Fahey purchased his in D.C. As Deoleo notes, the fact that three bottles "sitting on random store shelves in California" didn't pass a taste test does not plausibly suggest that the bottle Fahey purchased was similarly deficient, much less that *every* bottle sold in D.C. was as well. Def's MTD at 10-11. Were this the only logical leap in plaintiff's theory, dismissal might still be required. In a 2011 suit filed on the heels of the UC Davis results, a fellow district court in Florida all but concluded as much:

> [T]he study paints a very incomplete picture from which one could at best infer that a portion of Defendants' extra virgin olive oil products, distributed and sold in certain locations in California, do not meet all of the standards promulgated by the IOC for extra virgin olive oil. This does little to support an inference that consumers purchasing Defendants' extra virgin olive oil in Florida have been wronged or sold 'fake' olive oil. Plaintiffs make numerous conclusory allegations and assumptions based upon the UC Davis Study but without alleging any facts presenting a nexus or connection to Florida. There are no allegations that anyone

---

[2] Statement Issued by the Chemistry Expert Group of the International Olive Counsel on the Report Produced by the UC Davis Olive Centre, available at http:www.internationaloliveoil.org/documents/index/353-chemistry.

5

in Florida purchased extra virgin olive that tasted bad, or was tested and failed to meet certain standards, or was in any other way 'fake.'

Meyer v. Colavita USA Inc., No. 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011). Likewise here: Fahey does not allege that he, or anyone, had an unsatisfactory experience with Bertolli EVOO purchased in D.C., that testing revealed it might be something other than "extra virgin," or that there is any reason to think the three bottles tested in California in 2010 are relevantly similar to the one he purchased in D.C.

In sum, to hold that Fahey has pled facts that suggest a plausible right to relief would require the Court to entertain not one, not two, but all three of these assumptions. Unconvinced that any single one of them is warranted, the Court will grant Deoleo's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. A separate Order will accompany this memorandum opinion.

							_____
							CHRISTOPHER R. COOPER
							United States District Judge

Date: November 8, 2018